**Charles Edmond SWEETEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 64087, 64088.**

Court of Criminal Appeals of Texas, En Banc.

July 17, 1985.

Robert R. Foster, Longview, for appellant.

Odis R. Hill, Dist. Atty. and R. Clement Dunn, Asst. Dist. Atty., Longview, Robert Huttash, State's Atty., Austin, for the State.

### OPINION ON STATE'S MOTION FOR REHEARING

TEAGUE, Judge.

On original submission, after finding from the facts that the confession of Charles Edmond Sweeten, appellant, was the product of an illegal arrest and detention, and also finding that the prosecution failed to establish sufficient intervening circumstances or events that might have purged the primary taint, this Court held that the trial court committed reversible error when it admitted into evidence the illegally obtained confession. See *Sweeten v. State*, 667 S.W.2d 779, 780 (Tex.Cr.App. 1984)

For purposes of this opinion, we adopt the factual statements that are contained in the original opinion.

The district attorney [1] has filed a motion for rehearing in which he urges, inter alia, that it was unnecessary for this Court to reach the issue whether the appellant's confession was unlawfully obtained. He asserts that appellant waived any error, "first by offering [the confession] into evidence himself and then by testifying himself to the fact contained therein." [2] We

1. Hon. Odis Hill, who was then the district attorney, prosecuted this cause. Hon. Robert R. Foster, who with Hon. Ebb Mobley, represented appellant at trial and on appeal, subsequently became the district attorney. Hon. Carter Beckworth, who is now the district attorney, through one of his assistants, Hon. R. Clement Dunn, filed the State's Motion for Rehearing.

2. The record, inter alia, reflects that the following occurred when appellant was testifying: "Mr. Foster: At this time, Your Honor, we offer

granted the State's motion for rehearing to consider whether what this Court stated and held in *Thomas v. State*, 572 S.W.2d 507, 516 (Tex.Cr.App.1978), controls the disposition that we must make of the State's Motion for Rehearing. We find that it does. In *Thomas*, supra, this Court held that if the accused made a knowing decision to testify to overcome the impact of a confession illegally obtained and hence improperly introduced, his testimony is tainted by the same illegality that rendered the confession itself inadmissible.

■ The State, in its motion for rehearing, argues that the doctrine of curative admissibility controls the disposition of its motion for rehearing. Generally speaking, the evidentiary doctrine of curative admissibility is a rule of law that is ordinarily used by appellate courts when it first finds that the trial court erred by admitting into evidence over proper and timely objection certain evidence or testimony that should not have been admitted into evidence, but because it also finds that the defendant thereafter presented the same kind of evidence or testimony to which he had previously objected, the error is deemed to have been waived or cured by the defendant. See I *Wigmore on Evidence*, Section 15; 10A *Words and Phrases*, under the topic "Curative Admissibility"; *McCormick on Evidence*, Section 267; 5 *Tex.Jur.2d*, Appeal and Error — Criminal, Section 446. Also see *Daniel v. State*, 668 S.W.2d 390 (Tex.Cr.App.1984); *Porter v. State*, 623 S.W.2d 374 (Tex.Cr.App.1981), and the cases cited therein at page 392; *Simmons v. State*, 594 S.W.2d 760 (Tex.Cr.App.1980); *Nicholas v. State*, 502 S.W.2d 169, 174 (Tex.Cr.App.1973); and the list of authorities cited in *Smyth v. State*, 634 S.W.2d 721, 724 (Tex.Cr.App.1982) (Teague, J., dissenting opinion).

Early on, however, this Court engrafted onto the doctrine an exception. In *Dawson v. State*, 38 Tex.Cr.R. 9, 40 S.W. 731, 733–

734 (Tex.Cr.App.1897), also see *Red v. State*, 39 Tex.Cr.R. 414, 46 S.W. 408 (Tex.Cr.App.1898), and *Attaway v. State*, 41 Tex.Cr.R. 395, 55 S.W. 45 (Tex.Cr.App. 1900), it held that the error in the admission of evidence or testimony was *not* cured or waived by the defendant if, in putting on the same kind of evidence or testimony that was erroneously admitted into evidence by the trial court, he did so only to *rebut, destroy, or explain* the effect of the evidence or testimony that had been theretofore erroneously admitted over proper and timely objection. In *Dawson v. State*, supra, the Court gave the following as the reason for the exception: "[T]he defendant was driven to make the best shift he could to explain [the illegally seized or obtained evidence]." (40 S.W. at 733–734). In shorthand rendition, this is known as the "refute but did not confirm the evidence objected to" principle of law. Also see *Maynard v. State*, 685 S.W.2d 60 (Tex.Cr.App.1985).

Several years later, however, in *Mc Laughlin v. State*, 109 Tex.Cr.R. 307, 4 S.W.2d 54 (Tex.Cr.App.1928), this Court made it quite clear that there was a distinction between the "refute but did not confirm the objected to evidence" principle of law and the "confirm but did not refute the objected to evidence" principle of law. If it was shown that a defendant, when testifying, admitted or confirmed the truthfulness of certain facts which had been previously, but erroneously, admitted into evidence, he was deemed to have waived the error under such circumstances. Also see *Howard v. State*, 599 S.W.2d 597 (Tex.Cr.App.1980); *Alvarez v. State*, 511 S.W.2d 493 (Tex.Cr. App.1974); *Nicholas v. State*, supra; *Autry v. State*, 264 S.W.2d 735 (Tex.Cr.App. 1954).

The distinction between the "refute but did not confirm the evidence objected to" principle of law versus the "confirm but did not refute the evidence" rule of law re-

into evidence the entire [confession], including all of the portions that were not read to the Jury yesterday. Mr. Hill: I have no objection to you offering them." The record also reflects that

when appellant testified, he testified to the exculpatory portions of the confession that had been deleted when it was admitted into evidence.

mained the law of this State until this Court decided *Thomas v. State*, supra.

Using *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), as its linchpin, this Court held in *Thomas*, supra, that " 'the question is not whether the [defendant] made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of the [illegally obtained evidence] and hence improperly introduced,' the testimony is tainted by the same illegality that rendered the [evidence itself] inadmissible." (516). This Court also held that "the harmful effect of improperly admitted evidence which is obtained by illegal police practices is not cured when a defendant gives testimony on direct examination which establishes the same or similar facts *unless the State can show that its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony*." [Emphasis added].

The facts in *Thomas*, supra, reflect that a coat, containing contraband, was seized from the interior of a motor vehicle which had been driven by the defendant. The defendant had objected to the admissibility of the coat on the ground that it had been unlawfully seized, but his objection was overruled and the coat was admitted into evidence. Thereafter, the defendant testified and admitted that the coat had been inside of his automobile, but denied that it belonged to him, claiming, instead, that it belonged to another person.

On original submission, this Court held that the defendant did not waive the error by testifying because it found that his act of testifying was only to "meet, destroy, and explain" the unlawfully seized evidence.

On rehearing, this Court took the opportunity to consider whether the distinction between the principles of law, "refute but did not confirm the objected to evidence" and "confirm but did not refute the evidence," was any longer meaningful, and held that a defendant could testify and admit to the truthfulness of certain facts, while attempting to "explain" the circum-stances of the unlawfully seized or obtained evidence, and this would not constitute a waiver of his right to complain on appeal of the improperly admitted evidence. Since *Thomas*, supra, the new principle of law has been reaffirmed in *Benavides v. State*, 600 S.W.2d 809 (Tex.Cr.App.1980), and *Sherlock v. State*, 632 S.W.2d 604 (Tex.Cr.App.1982). Cf. *Murphy v. State*, 640 S.W.2d 297 (Tex.Cr.App.1982).

The district attorney, however, appears to argue in his motion for rehearing that because of the difference between the facts that were presented in this cause and those found in *Harrison v. United States*, supra, that the principles of law announced in *Harrison*, which this Court expressly adopted in *Thomas*, do not apply to this cause. We find that this reflects a total lack of appreciation of the principles of law announced in *Harrison v. United States*, supra, although we concede that to appreciate those principles of law it is absolutely necessary to understand the unique facts that the Supreme Court was faced with when it decided *Harrison*.

The facts in *Harrison* reflect that the defendant Harrison was convicted of murder after a jury trial. During the first trial, but over objection, three confessions of the defendant were admitted into evidence. Notwithstanding the admission of this evidence, the defendant still testified. Thereafter, while the case was on appeal, he and his two co-defendants were granted new trials because it was found that they had been represented by a character resembling Ferdinand Demara, who was made famous by the actor Tony Curtis in the movie "The Great Imposter."

After reversal, a retrial occurred, which appears to have been a mere repeat performance of what occurred at the first trial. After conviction, another appeal occurred, after which the defendant received another new trial, this time because the appellate court found that the defendant's three confessions had been unlawfully obtained and should not have been admitted into evidence.

Thereafter, another trial took place. This time, however, the prosecution did not introduce into evidence the three confessions of the defendant, but, instead, read into evidence the testimony that the defendant had given at his second trial, to which his counsel had objected at the second trial on the ground that the defendant had been impelled to testify at the first trial only because of the introduction against him of the illegally obtained confessions. The appellate court affirmed the conviction but the Supreme Court of the United States granted certiorari.

The Supreme Court first rejected the implicit argument that the Government's attorney had made, that because the defendant had chosen to testify, he waived his right against compulsory self-incrimination with respect to the testimony that he had given at the second trial. In rejecting the argument, the Supreme Court expressly pointed out that the defendant had testified at the second trial only after the illegally obtained confessions had been admitted into evidence. The Supreme Court then held: "[T]he same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby— the fruit of the poisonous tree, to invoke a time-worn metaphor." 392 U.S. at 222, 88 S.Ct. at 2010, 20 L.Ed.2d at 1051. The Supreme Court next held that "The question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." 392 U.S. at 223, 88 S.Ct. 2010, 20 L.Ed.2d at 1052. It lastly held that "[h]aving 'released the spring' by using the petitioner's unlawfully obtained confessions against him, the Government must show that its illegal action did not induce his testimony." 392 U.S. at 225, 88 S.Ct. at 2011, 20 L.Ed.2d at 1053. The Supreme Court then found that the Government had not sustained its burden in that cause, "[The Government] has not demonstrated, therefore, that the petitioner's testimony was obtained 'by means suffi-

ciently distinguishable' from the underlying illegality 'to be purged of the primary taint.' *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407 [417] 9 L.Ed.2d 441, 455 [(1963)]." 392 U.S. 226, 88 S.Ct. 2011, 20 L.Ed.2d at 1053. The defendant's conviction was then ordered reversed.

Notwithstanding that we agree with the district attorney that the facts of *Harrison v. United States*, supra, are obviously distinguishable from either *Thomas v. State*, supra, or this cause, we find that the principles of law stated in *Harrison*, which we find fall under the rationale of the "fruit of the poisonous tree" doctrine, see *Wong Sun v. United States*, supra, which principles this Court held in *Thomas v. State*, supra, were but a corollary to the doctrine of curative admissibility, are more than applicable to the situation where a defendant is impelled to testify because of the admission into evidence over objection of illegally seized or obtained evidence.

■ We also find that *Sherlock v. State*, 632 S.W.2d 604 (Tex.Cr.App.1982), wherein this Court clarified its holding that was made in *Thomas v. State*, supra, by stating the following: "However, where a defendant testifies in order to overcome the impact of illegally obtained and improperly admitted evidence, that testimony is tainted by the same illegality that renders the evidence inadmissible," and, after quoting from *Harrison v. United States*, supra, held that it is then incumbent upon the prosecution "to demonstrate that the knowledge it had gained came from an independent source or the evidence had been obtained by means sufficiently distinguishable from the underlying illegality to be purged of the primary taint." (606).

In *Sherlock*, supra, a panel of this Court expressly overruled all prior decisions of this Court that were in conflict with the principles of law stated in *Thomas v. State*, supra. Because the State's motion for rehearing was expressly overruled by the Court, en banc, the panel's act was implicitly approved by the entire Court. Today,

we expressly approve what the panel held in *Sherlock v. State*, supra. We also point out that since *Thomas v. State*, supra, the principles of law stated therein have been reaffirmed in *Sherlock v. State*, supra, also see *Benavides v. State*, supra. Cf. *Murphy v. State*, 640 S.W.2d 297 (Tex.Cr.App. 1982). Those principles control the disposition that we must make of the State's Motion for Rehearing.

 As previously pointed out, this Court on original submission found that appellant's confession had been unlawfully obtained. We affirm that holding. We also find that appellant timely and properly objected to its admission into evidence at his trial. After carefully reviewing the evidence, we find that the State did not establish that its illegal action in obtaining from appellant his illegal confession did not impel his testimony. *Harrison v. United States*, supra; *Sherlock v. State*, supra; *Benavides v. State*, supra; *Thomas v. State*, supra.

We also reject, for the reasons that we have previously stated, the State's contention that because the appellant, when testifying, had admitted into evidence the exculpatory portions of his confession, after the prosecution previously had admitted into evidence the inculpatory portions of the confession, that this also waived the error. See, however, Art. 38.24, V.A.C.C.P.[3] We so hold because the prosecution, "[h]aving 'released the spring' by [first] using the [appellant's] unlawfully obtained confession against him, [it was then required to] show that its illegal action did not induce his testimony."

Furthermore, once it was established that the appellant's confession should not have been admitted into evidence, the fact that in principle appellant might have invoked the provisions of Art. 38.24, supra, by having admitted into evidence the exculpa-

tory portions of the confession, did not cure the error because the prosecution still had the burden to establish that its illegal action, in having the illegal confession admitted into evidence, did not impel appellant to testify. As we stated in *Thomas v. State*, supra, at 516: "Under Harrison, the 'question is not whether the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of the confessions illegally obtained and hence improperly introduced,' the testimony is tainted by the same illegality that rendered the confessions themselves inadmissible." In this instance, we find that the State has failed to establish that its having appellant's illegally obtained confession admitted in to evidence did not impel appellant to testify.

The State's motion for rehearing is overruled.

WHITE, J., concurs in the result.

CLINTON, J., not participating.

---

**3.** Art. 38.24, V.A.C.C.P., provides:

When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence.